# United States District Court
## for the Northern District of Oklahoma

Case No. 23-cr-331-2-JDR

UNITED STATES,

*Plaintiff,*

versus

KEVIN RAMSES ROCHA,

*Defendant.*

### OPINION AND ORDER

Defendant Kevin Ramses Rocha pleaded guilty to the single count of wire fraud conspiracy based on his participation in a scheme known as the Artemis Refund Group, or ARG. Dkt. 108 The United States Probation Office prepared an initial Presentence Investigation Report that found the total loss attributable to Mr. Rocha from the conspiracy to be $2,496,181.85 and disclosed it to the parties on February 12, 2025. *See* Dkt. 356. Mr. Rocha objected to the PSR [Dkt. 406], disputing the loss amount attributed to him. The Probation Office revised its calculations in response to Mr. Rocha's objections, concluding that the loss attributable to Mr. Rocha was $1,502,216.74. At the parties' request [Dkts. 406, 411], the Court held an evidentiary hearing on May 22, 2025. Dkt. 420. At the Court's request, the parties filed post-hearing proposed findings of fact and conclusions of law. Dkts. 451, 468, 476. The Government proposes that Mr. Rocha is responsible for losses in excess of $8 million, and Mr. Rocha argues that he is responsible for less than $370,000. After reviewing the evidence presented by the parties and the Probation Office, the Court finds that the total loss attributable to Mr.

No. 23-cr-331-2

Rocha under the U.S. Sentencing Guidelines exceeds $1,500,000 but does not exceed $3,500,000.

I

The Government did not object to the initial PSR, but Mr. Rocha objected to the Probation Office's determination that the total loss attributable to him under USSG 2B1.1(b)(1)(I) was $2,496,181.85. Specifically, Mr. Rocha argued that he was responsible for losses of only $363,204.76, an amount reflecting the "concrete gain" that could be traced directly to his bank account. Dkt. 406 at 3-4. Additionally, Mr. Rocha argued that the Probation Office incorrectly based its calculation on a spreadsheet (the "ARG spreadsheet") which encompassed transactions that he did not know about and could not have foreseen. *Id.*

The Probation Office revised the PSR on April 10, 2025, in response to Mr. Rocha's objections. The revision removed duplicate loss amounts and recalculated the total loss attributable to Mr. Rocha to be $1,502,216.74. The Government did not object to the revised PSR, but it did respond to Mr. Rocha's original objection. Dkt. 411. In its response, the Government argued that Mr. Rocha was responsible for loss in excess of $1.5 million, which was consistent with the calculation in the presentence investigation report. At the Court's evidentiary hearing on May 21, 2025, the Government presented one witness, Federal Bureau of Investigation Special Agent Preston Ackerman, and sixteen exhibits.

The Government's proposed findings [Dkt. 451] assert a total loss of $8,614,806.71, arguing that evidence from the hearing supported the amount. The Government submitted exhibits to support its proposed loss amount: ARG spreadsheet, $1,909,886; Luxe Deals spreadsheet, $37,489.42; orders Mr. Rocha made with Wyatt Miller, $30,284.28; several screenshots of conversations between defendant and codefendants, $10,895.29; Walmart Grocery orders, $180,748.43; Home Depot orders, $46,335.92; merchandise

2

No. 23-cr-331-2

recovered from Mr. Rocha's residence, $761,150; E-Market Capital records, $268,903.37; Ressu Refunds spreadsheet, $5,300,000; and communications regarding a "Wally Spot" money laundering scheme, $79,000.

Mr. Rocha's proposed findings [Dkt. 468] set forth a total loss attribution of no more than $318,115.14. Mr. Rocha contends that his role in the refund fraud conspiracy was limited to that of a customer of ARG and that he is only liable for executing approximately twenty orders totaling $13,262.70. Mr. Rocha argues he did not share a common plan with others or act in furtherance of others' conduct in ARG and that, as a result, he should not be held accountable for others' actions. Mr. Rocha proposes the following loss amounts: Luxe Deals, $37,489.42; orders with Wyatt Miller, $30,284.28; Walmart Grocery, $180,748.43; Home Depot $46,335.92, and Ressu Refunds $9,994.39. Mr. Rocha contests all other loss amounts proposed by the Government.

II

The Court must find the amount of the loss attributable to Mr. Rocha to determine the appropriate enhancement to his base offense level of 7. There are three proposed loss calculations before the Court: the revised PSR, the Government's, and Mr. Rocha's. The revised PSR calculated a total loss of $1,502,216.74 that, if accepted, would result in a sixteen-level enhancement to the base offense level under USSG §2B1.1(b)(1)(I), because the loss was more than $1,500,000 but not more than $3,500,000 (*see* revised PSR ¶ 20). With the uncontested two-level enhancement for sophisticated means, the total base offense level would be 25. After a three-level decrease for acceptance of responsibility, the total offense level would be 22, and the calculated guideline range of imprisonment would be 41 to 51 months' imprisonment (*see* revised PSR ¶ 45).

The Government argues that the loss attributable to Mr. Rocha totals $8,614,806.71. If accepted, this loss amount would result in an eighteen-level

3

No. 23-cr-331-2

increase under USSG §2B1.1(b)(1)(J). According to the Government, the total offense level should be 24 with a guideline range of 51 to 63 months' imprisonment.

Mr. Rocha argues that the total loss amount is $318,115.14, resulting in a twelve-level enhancement under USSG §2B1.1(b)(1)(G). Mr. Rocha therefore asserts that his total offense level is 18, which corresponds to a guideline range of 27 to 33 months' imprisonment.

III

Under USSG §2B1.1 comment. (3(B)), the Court need only make a reasonable estimate of the loss attributable to a defendant after assessing the evidence.[1] The Court's estimation of loss must be sufficient to determine the appropriate guideline range. *Id.* The Court has considered evidence presented by both parties at the evidentiary hearing, including the testimony of Special Agent Ackerman and the subsequent filings, in reaching its estimate.

A

The Court notes at the outset that certain categories of loss are not at issue. Mr. Rocha does not contest, and the Court finds, that the hearing evidence supports Mr. Rocha's responsibility for the following loss amounts: Luxe Deals Refunds, $37,482.42 [Dkt. 468 at 6]; orders with Wyatt Miller, $30,284.28 [Dkt. 468 at 7]; Walmart Grocery, $180,748.43 [Dkt. 468 at 7]; Home Depot $46,335.92 [Dkt. 468 at 8]; ARG spreadsheet amounts totaling $13,262.70 [Dkt. 468 at 4]; and Ressu Refunds $9,994.39 [Dkt. 468 at 9-10]. Mr. Rocha therefore admits that the losses attributable to him from that evidence falls between $250,000 and $550,000. *See* USSG 2B1.1(b)(1)(G). Based upon Mr. Rocha's agreement, the Court finds that the loss amount is

---

[1] The Government is not seeking restitution on behalf of the victims because no victim has made a request for restitution. The Court has no information about whether those retailers have been reimbursed by third parties or insurers; restitution is, therefore, not ascertainable.

4

No. 23-cr-331-2

at least $318,115.14. Dkt. 468 at 11. The Court begins its loss calculation with that as the base amount.

B

The parties' disagreements over the appropriate loss attribution encompass two separate issues: First, which ARG transactions may fairly be attributed to Mr. Rocha? Second, can Mr. Rocha be held responsible for the value of goods found in his home that were obtained during the course of the conspiracy? The Court addresses each issue in turn.

1

The Court finds that the loss attributable to Mr. Rocha based on the fraudulent activities of ARG to be $1,480,127.96, as reflected in the revised PSR at ¶ 11.[2] This amount is approximately $420,000 less than the amount requested by the Government. Dkt. 451 at 7, ¶ 27. The discrepancy results from the timeframes used by the Government and the Probation Office. When the Probation Office calculated the loss amount for ARG, it used a narrower timeframe to account for the period during which Mr. Rocha was involved: November 6, 2021, to June 15, 2022. PSR at ¶ 11. The Government, however, argues that Mr. Rocha should be held responsible for conduct that falls outside of this timeframe because his "first involvement" with ARG was in August 2021. The Government has not established by a preponderance of the evidence that Mr. Rocha was participating in the conspiracy during the broader timeframe. The Court therefore finds that the loss attributed to Mr. Rocha should be limited to those incurred during the period of his involvement in the conspiracy from November 6, 2020, to June 15, 2022, and adopts the amount in the revised PSR. The amount in the revised PSR is supported by a preponderance of the record evidence. The Court rejects Mr. Rocha's

---

[2] Due to a miscommunication, the presentence report mistakenly attributed the loss amounts within the spreadsheet in this paragraph to a different log that was not associated with ARG. The Government clarified through testimony at the hearing that the spreadsheet from which these losses were derived was from ARG.

5

No. 23-cr-331-2

assertion that the loss amount attributable to ARG is limited to $13,262.70. Mr. Rocha's assertion is not supported by the evidence of record.

Mr. Rocha asserts that, regardless of the losses attributable to ARG, he should not be responsible for those losses because he was merely an ARG customer. Dkt. 468 at 5-6. The Government's evidence proves otherwise. The Government has shown by a preponderance of the evidence that Mr. Rocha's role was not that of a mere consumer [*see* Dkt. 468 at 5-6], and Mr. Rocha should be held accountable for both his own actions and those of coconspirators during this time frame.

In making this determination, the Court has considered the factors in USSG §1B1.3(a)(1)(B), which hold a defendant accountable for the acts of others if his conduct is (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity.

The evidence shows that Mr. Rocha was aware that many others within ARG were conducting transactions like his [Dkt. 451 at 7], and that their actions were in furtherance of the same jointly undertaken fraudulent scheme. The Court finds that the jointly undertaken activity was reasonably foreseeable because Mr. Rocha used multiple Google email accounts to facilitate and track fraudulent returns, stored fraudulently obtained items at his primary residence to assist co-defendant Antonio Munoz, and communicated with indicted and unindicted coconspirators to facilitate return fraud through various methods, including shipping label manipulation.

Further, a search of Mr. Rocha's house recovered multiple boxes of unopened merchandise, unused shipping labels with the names "Wyatt Miller" and "Antonio Munoz," and a Munbyn label printer. Given this evidence, the volume of recovered communications Mr. Rocha maintained with individuals within ARG, Mr. Rocha's agreement with Mr. Munoz to house fraudulently obtained goods for the sole purpose of reselling them for profit, and

No. 23-cr-331-2

the shipping labels created by Mr. Rocha that were found at his house, the Court finds that the actions of the coconspirators in furtherance of the jointly undertaken conspiracy to commit fraud were reasonably foreseeable to and attributable to Mr. Rocha. The $1,480,127.96 attributed to ARG during Mr. Rocha's participation in that group will be added to the base loss amount that Mr. Rocha admits responsibility for.

2

The Government contends that Mr. Rocha should be held responsible for the value of the fraudulently obtained goods recovered from his house, in addition to the other amounts already attributable to him. The Government presented evidence that those stolen goods have a value of $761,150. But it is unclear from the PSR, the testimony of the agent, and the other evidence presented whether Mr. Rocha has already been held accountable for those items. The Court cannot discern whether those items are accounted for in the ARG loss amount, and the Government has not presented reliable evidence that they are not. The Court finds that the Government has not shown by a preponderance of the evidence that the value of the recovered goods are not accounted for in the ARG loss amount. Therefore, the value of those goods will not be included in the estimation of loss.

C

The Court turns to the Government's argument that Mr. Rocha should be held responsible for losses attributable to other schemes outside of ARG, including the "Ressu Refunds" scheme and the Wally Spot money laundering scheme. Although these losses were not included in the revised PSR, the Government did not object that the revised PSR's loss amount was too low. Instead, the Government sought to attribute these substantial loss amounts to Mr. Rocha for the first time at the evidentiary hearing, arguing that Mr. Rocha was responsible for a loss of $5,300,000 through the "Ressu Refunds" scheme and a loss of $79,000 for his role in the "Wally Spot" money laundering scheme. Dkt. 451 at 11-13.

No. 23-cr-331-2

Mr. Rocha disputes that these losses are attributable to him. He argues that he was merely a customer who placed orders in the Ressu Refunds scheme and that there is no evidence he had any other involvement with or knowledge of that conspiracy. Mr. Rocha further argues that the more-than $5,000,000 in loss attributed by the Government to him in the Ressu Refunds conspiracy and the $79,000 in the "Wally Spot" money laundering scheme were not included in the original or revised PSR to which the Government did not object and that the Government should not be permitted to introduce evidence of those schemes at this juncture. He concludes that no evidence supports the loss amounts presented by the Government to him or the United States Probation Office prior to the evidentiary hearing and, therefore, should not be considered under Local Criminal Rule 32-4 and Federal Rule of Criminal Procedure 32(f).

Mr. Rocha further argues that there is insufficient evidence to establish that his involvement in Ressu Refunds, or Wally Spot meets the criterion for inclusion of loss amounts caused by others under relevant conduct or expanded relevant conduct at USSG §§ 1B1.3 (a)(1)(B) or (2). Mr. Rocha contests the consideration of screenshots and emails because they do not reflect transactional data and could be perceived as overinflating the business of the return scheme; and the E-Market Capital profits because the Government did not prove which, if any, orders fulfilled by E-Market Capital were obtained through fraudulent returns related to ARG.

The Court agrees with Mr. Rocha and finds that the Government did not show, by a preponderance of the evidence, that Mr. Rocha was responsible under the Sentencing Guidelines for the Ressu Refunds losses or the Wally Spot losses. Those losses were not reasonably foreseeable to Mr. Rocha. The only tie between Mr. Rocha and these losses is (1) a job application and (2) the appearance of Mr. Rocha's name in a spreadsheet. That evidence is insufficient to connect Mr. Rocha to the entire Ressu Refunds or Wally Spot losses. Because the Government did not meet its burden to hold Mr. Rocha

No. 23-cr-331-2

responsible for those losses, the Court will not add them to its loss calculation.

### III

After considering the testimony and exhibits from the hearing, the Court finds by a preponderance of the evidence that Mr. Rocha is accountable for a total loss amount exceeding $1,500,000 but not exceeding $3,500,000. The loss amount is composed of the amounts to which Mr. Rocha does not dispute plus the ARG losses for the time period set forth in the revised PSR. Mr. Rocha is therefore subject to the sixteen-level enhancement to the base offense level under USSG §2B1.1(b)(1)(I). The Probation Office appropriately calculated the loss amount at ¶ 20 of the revised PSR, and the total offense level of 20 at ¶ 29 is correct. The applicable guideline range for imprisonment remains 33 to 41 months (*see* revised PSR ¶ 45).

IT IS THEREFORE ORDERED that Mr. Rocha's objection to the presentence investigation report [Dkt. 406] is overruled.

IT IS FURTHER ORDERED that the sentencing hearing is scheduled for December 22, 2025, at 9:00 a.m.

DATED this 18th day of November 2025.

JOHN D. RUSSELL
*United States District Judge*